SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JAN - 5 2016
ARTHUR JOHNSTON
BY DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

GULF RESTORATION NETWORK,
Plaintiff,

v.

TOWN OF CENTREVILLE, MISSISSIPPI,
Defendant.

5:16-cv-1 DCB-MTP

# COMPLAINT

## INTRODUCTION

For years, the Town of Centreville has been violating the Clean Water Act by discharging raw sewage from broken and inadequate pipelines into tributaries of Stafford Creek. During or after heavy rainfall events, untreated sewage surges out from the pipelines leading to the Centreville Public Owned Treatment Works, South (the "South POTW"), fouling the residences and waters in a low-income neighborhood in Centreville, Mississippi. No permit authorizes these discharges. Despite years of complaints to the Mississippi Department of Environmental Quality, no action has been taken to fix the problem. Accordingly, Plaintiff, Gulf Restoration Network ("Gulf Restoration"), brings this action under the citizen suit provision of the Clean Water Act.

## JURISDICTION

1. Plaintiff, the Gulf Restoration Network ("Gulf Restoration"), brings this citizens' enforcement action under the citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365(a) against Defendant, Town of Centreville, for violations of the Clean Water Act, 33 U.S.C. §§ 1251-1376.

2. This Court has jurisdiction over the subject matter of this case pursuant to its federal question jurisdiction under 28 U.S.C. § 1331, 33 U.S.C. § 1365(a)(1), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

**VENUE**

3. Venue is proper in this Court pursuant to Clean Water Act because the source of the discharges is located in this district. 33 U.S.C. § 1365(c)(1).

**NOTICE**

4. Plaintiff provided notice of the violations alleged in this Complaint in a October 7, 2015, Notice of Intent to File Suit ("the Notice") sent by certified mail to the Defendant, the U.S. Attorney General, the Administrator of the Environmental Protection Agency ("EPA"), the Administrator of EPA Region 4, and the Executive Director of the Mississippi Department of Environmental Quality ("MDEQ"). The Notice complies with 33 U.S.C. § 1365(b), and 40 C.F.R. §§ 135.1-135.3. A copy of the Notice, including certified mail receipts, is attached as "Exhibit A" and incorporated by reference.

5. More than sixty (60) days have passed since Plaintiff provided the Defendant, U.S. Attorney General, EPA and MDEQ with the Notice.

6. Neither EPA nor MDEQ are diligently prosecuting a civil or criminal action in a court to redress the Defendant's continuing violations.

**PARTIES**

7. Plaintiff Gulf Restoration is a network of environmental, social justice, and citizens' groups and individuals committed to restoring the Gulf of Mexico to an ecologically and biologically sustainable condition. Gulf Restoration's members live, work, and recreate, in the five Gulf states of Louisiana, Texas, Mississippi, Alabama, Florida, and nationwide.

8. Gulf Restoration's members include homeowners and residents of Centreville, Mississippi, whose property is located in the area where Defendant's unauthorized discharges occur. The discharge of untreated sewage at issue in this Complaint injures members of Gulf Restoration. For example, the discharge impairs these members' enjoyment and use of their property, the tributaries of Stafford Creek, and the surrounding area. This lawsuit is germane to the purpose of the Gulf Restoration.

9. Gulf Restoration's members' injuries are actual and concrete, irreparable, and fairly traceable to Defendant's unauthorized discharges. This Court may grant relief to redress these injuries under the Clean Water Act.

10. Gulf Restoration is a "person" and a "citizen" as defined by the Clean Water Act, 33 U.S.C. § 1362(5).

11. Defendant, the Town of Centreville, is the owner and operator of the South POTW which is located at Gualden-Clinton Road, Centreville, MS 39631.

12. The Town of Centreville is the owner and operator of the pipeline system leading to the South POTW.

13. The Defendant is a "person" as defined by the Clean Water Act, 33 U.S.C. § 1362(5) and 40 C.F.R. § 122.2.

## GENERAL ALLEGATIONS

### *LEGAL BACKGROUND*

14. The Clean Water Act prohibits "the discharge of any pollutant by any person," except in compliance with the Clean Water Act's permitting provisions. 33 U.S.C. § 1311(a).

15. The term "pollutant" includes solid waste, sewage, and sewage sludge. 33 U.S.C. § 1362(6).

16. The terms "discharge of pollutant" and "discharge of pollutants" mean, among other things, "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12).

17. The Clean Water Act defines the term "point source" to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch... [or] channel... [or] discrete fissure." 33 U.S.C. § 1362(14).

18. "Navigable waters" means "the waters of the United States." 33 U.S.C. § 1362(7).

19. The term "waters of the United States" includes: "intrastate lakes, rivers, streams (including intermittent streams)... the use, degradation, or destruction of which would affect or could affect interstate or foreign commerce" and "tributaries of [such] waters." 40 C.F.R. § 122.2.

20. Under the Clean Water Act, a "Publicly-Owned Treatment Works … means a treatment works … owned by a State or municipality. This definition includes any devices and systems used in the storage, treatment, recycling and reclamation of municipal sewage or industrial wastes of a liquid nature. It also includes sewers, pipes and other conveyances only if they convey wastewater to a POTW Treatment Plant." 40 C.F.R. 403.3.

21. The Clean Water Act establishes a permitting program that allows point source pollutant discharges into navigable water, but only in accordance with the terms of the permit. 33 U.S.C. § 1342(a).

22. The Clean Water Act authorizes "any citizen" to bring suit "against any person... who is alleged to be in violation of an effluent standard or limitation under this chapter" and grants district court's jurisdiction "to enforce such effluent standard or limitation... and to apply any appropriate civil penalties under section [309(d)] of this title." 33 U.S.C. § 1365(a).

## FACTUAL ALLEGATIONS

23. Centreville's pipeline system conveying waste to the South POTW intermittently discharges untreated sewage into a low-income residential area that is bounded to the north by Fort Street, to the west by Nashville Street, to the east by Hospital Road, and to the south by Highway 24 (the "Affected Area").

24. Two branches of an unnamed tributary of Stafford Creek flow in the Affected Area. The more eastern branch (the "East Branch") crosses Fort Street and then Hospital Road before joining the more northern branch, which crosses only Fort Street (the "North Branch" and, together with the East Branch, the "Stafford Creek Tributary"). The branches join between Nashville Street and Hospital Road and then flow southwest to Stafford Creek.

25. During or after heavy rainfall events, the pipelines conveying wastewater to the South POTW discharge untreated sewage that flows into the Stafford Creek Tributary (the "Unauthorized Discharges").

26. Specific points of Unauthorized Discharges from Centreville's pipeline system into the Affected Area include:

a. A manhole southeast of the intersection of Nashville Street and Fort Street that discharges into the North Branch of the Stafford Creek Tributary;

b. A cracked pipe south of Fort Street and within the North Branch of the Stafford Creek Tributary;

c. A manhole near the intersection of Fort Street and Hospital Road that discharges into the Stafford Creek Tributary; and

d. A broken PVC pipe on the west side of Hospital Road to the north of Hospital Road's crossing of the East Branch that discharges into the East Branch of the Stafford Creek Tributary.

27. Specific instances of Unauthorized Discharges include, but are not limited to:

| Date | Duration of Discharges | Gallons Discharged |
|---|---|---|
| Approx. 03/19/2012 | 24 hours | 2,000 |
| 08/31/2012 | 14 hours | 7,500 |
| 03/08/2013 | unknown | unknown |
| Approx. Apr. 2013 | 3.5 hours | unknown |
| Approx. 05/22/2013 | 24 hours | 7,500 |
| 05/22/2013 | 24 hours | 7,500 |
| 06/19/2013 | 24 hours | Unknown |
| 06/19/2013 | 24 hours | Unknown |
| 08/14/2013 | 3 hours | 1,500 |
| 08/11/2015 | unknown | unknown |
| 10/25/2015 | unknown | unknown |
| 11/14/2015 | unknown | unknown |
| 11/17 – 18 / 2015 | unknown | unknown |

28. Upon information and belief, additional Unauthorized Discharges have occurred and are likely to continue.

29. MDEQ issued Centreville a Clean Water Act permit to discharge treated effluent from the South POTW into Stafford Creek (Permit No. MS0025909).

30. Centreville's Permit states that, "the permittee must comply with all conditions of the permit. Any permit noncompliance constitutes a violation of the Clean Water Act …." *See* Permit, Condition T-27, p. 10. *See also* 40 C.F.R. § 122.41(a); Miss. Code § 49-17-31.

31. The Permit allows limited discharges of treated sewage only from a specific outfall point into Stafford Creek.

32. Under the Permit, a "bypass" means "the intentional diversion of waste stream from any portion of a treatment facility." *See* Permit, Condition T-31, pg. 11.

33. Condition T-34 of the Permit prohibits bypass unless:

a. "Bypass was unavoidable to prevent loss of life, personal injury or sever property damage;"

b. "There was no feasible alternatives to the bypass, such as the use of auxiliary treatment facilities, retention of untreated wastes, or maintenance during normal periods of equipment downtime…;" and

c. "The permittee submitted notices as required under the Twenty-Four Hour reporting requirements set forth in this permit."

34. The Unauthorized Discharges into the Affected Area and the Stafford Creek Tributary are not lawful bypasses under the Permit.

35. The Unauthorized Discharges are avoidable.

36. Feasible alternatives to the raw sewage discharges exist in the form of installation of adequate back-up equipment, maintenance, and repair.

37. Centreville has failed to report the Unauthorized Discharges.

## **FIRST CAUSE OF ACTION**

38. Stafford Creek and the Stafford Creek Tributary are "waters of the United States" and "navigable waters" under the Clean Water Act.

39. Centreville's pipeline system is a "discrete conveyance" under the Clean Water Act.

40. Each component of Centreville's pipeline system including without limitation manholes and pipes that convey wastewater, is a "point source" under the Clean Water Act.

41. Pollutants that Centreville releases from its pipeline system into the Affected Area ultimately discharge to the Stafford Creek Tributary and then to Stafford Creek.

42. By releasing pollutants from its pipeline system to the Affected Area, Centreville adds these pollutants to Stafford Creek and the Stafford Creek Tributary. Accordingly, Centreville's release of pollutant into the Affected Area constitute the discharge of pollutants from a point source to navigable waters.

43. No Clean Water Act permit authorizes Centreville to discharge pollutants to the Stafford Creek Tributary.

44. No Clean Water Act permit authorizes Centreville to discharge pollutants to Stafford Creek upstream of its permitted outfall.

45. Centreville's intermittent releases of untreated sewage from its pipeline system to the Affected Area since at least January 5, 2011 (five years before filing of this Complaint) violate the Clean Water Act. *See* 33 U.S.C. § 1311(a).

46. The discharges at issue in this Complaint are ongoing and, upon information and belief, will continue until and unless enjoined by this Court.

**SECOND CAUSE OF ACTION**

47. To the extent that Centreville's Clean Water Act Permit can be read to apply to discharges from Defendant's pipeline system, Centreville's intermittent releases of untreated sewage in the Affected Area and discharges into Stafford Creek and the Stafford Creek Tributary since at least January 5, 2011 (five years before filing of this Complaint) violate that Permit, including, but not limited to, bypass limitations, monitoring requirements and other Permit conditions. *See* 33 U.S.C. §§ 1311(a), 1342.

**THIRD CAUSE OF ACTION**

48. Condition No. T-28 of Centreville's Permit states that the "permittee shall at all times properly operate, maintain, and when necessary, promptly replace all facilities and system

of collection, treatment and control (and related appurtenances) which are installed or used by the permittee to achieve compliance with the conditions of this permit." *See* Permit, at p. 10.

49. The discharges alleged in this Complaint show that Centreville fails to properly operate, maintain, and when necessary, promptly replace all facilities and system of collection, treatment and control (and related appurtenances) which are installed or used by the Centreville in its efforts to achieve compliance with the conditions of the Permit.

50. Centreville is in violation of Condition T-28 of its Permit.

51. Centreville's ongoing failure to meet Condition No. T-28 result in the Unauthorized Discharges into Stafford Creek Tributary.

52. 33 U.S.C. § 1365(f) empowers citizens (including the Plaintiff) to enforce, *inter alia*, conditions of a Clean Water Act permit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

A. A declaratory judgment that the Defendant is violating the Clean Water Act.

B. An Order enjoining the Defendant from discharging wastewater in violation of the Clean Water Act.

C. An Order requiring compliance with Permit Condition No. T-28.

D. Civil penalties in the amount of $37,500 per day per violation since August 14, 2013, as provided by Clean Water Act § 309 (d) and federal regulations. 33 U.S.C. § 1319(d); 40 C.F.R. § 19.4.

E. An award of reasonable attorney fees and costs pursuant to the Clean Water Act, 33 U.S.C. § 1365(d).

F. Such other relief as this Court may deem appropriate.

Respectfully submitted this 5th of January 2016,

Cynthia Sarthou, MS Bar No. 6469
Gulf Restoration Network
330 Carondelet Street, 3rd Floor
New Orleans, LA 70130
Tel. No. (504) 525-1528
Fax No. (504) 525-0833
*Counsel for Gulf Restoration Network*

*To be added as additional counsel for Gulf Restoration Network following pro-hac vice admission:*
Elizabeth Livingston de Calderón, LA Bar No. 31443
Adam Babich, LA Bar No. 27177
Tulane Environmental Law Clinic
6329 Freret St.
New Orleans, LA 70118
Tel. No. (504) 865-5789
Fac. No. (504) 862-8721

Complaint substantially prepared by Jessica P. Marsh, Tulane University School of Law student, under the supervision of Tulane Environmental Law Clinic attorneys.